*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

DAVONTE CHRISTOPHER BURKETT,

Defendant-Appellant.

UNPUBLISHED
June 16, 2026
9:03 AM

No. 371886
Oakland Circuit Court
LC No. 2022-281482-FH

Before: YOUNG, P.J., and BORRELLO and TREBILCOCK, JJ.

PER CURIAM.

A jury convicted defendant, Davonte Burkett, of two firearm crimes he committed while on parole. He raises several claims on appeal, including the effectiveness of his trial counsel, the sufficiency of the evidence supporting his convictions, his constitutional right to a speedy trial, prosecutorial misconduct, and the constitutionality of the felon-in-possession statute. We affirm.

I. PERTINENT FACTUAL BACKGROUND AND PROCEDURAL HISTORY

After defendant absconded from parole, Oakland County's Fugitive Apprehension Team determined that he was at a Pontiac residence on November 19, 2018. Lashunda Fulbright, John Fulbright, and Terin Edwards lived there. Officers obtained permission from Lashunda to enter the residence and arrest defendant. Inside John's bedroom, defendant was standing with the back of his legs against John's bed. Another individual, Jaquan Fletcher, was seated about 15 feet away in the same room. Officers secured them. Oakland County Sheriff's Deputy Charles Janczarek then lifted the mattress off its box spring and discovered a handgun underneath. A forensic technician subsequently swabbed the handgun for DNA processing.

Years then passed. In December 2020, a DNA profile excluded John from being "a possible contributor." Fifteen months after that, in March 2022, a lab analysis compared a sample of defendant's DNA obtained via search warrant to that found on the handgun and concluded there was "very strong support" that defendant was a contributor—the comparison determined it was approximately 6.27 sextillion times more likely defendant and three unknown individuals were the contributors than "four unrelated, unknown individuals."

-1-

We also note here additional pertinent dates to defendant's speedy trial concerns raised on appeal. On May 19, 2022, defendant was charged with being a felon in possession of a firearm (felon-in-possession), in violation of MCL 750.224f, and carrying a firearm during the commission of a felony (felony-firearm), third offense, in violation of MCL 750.227b. The trial court arraigned him on July 27, 2022. Less than two months later, on September 14, 2022, defendant moved to suppress the handgun, arguing the officers' warrantless search violated his Fourth Amendment rights. The trial court denied that motion on September 27, 2022, finding defendant absconded from parole, officers received permission to enter, and the officers located the handgun during a valid search incident to arrest.

After multiple pretrial adjournments, defense counsel moved to withdraw from representing defendant in April 2023. At the subsequent hearing, defendant raised speedy trial concerns in opposing his counsel's withdrawal and the prosecutor disclosed that defendant was separately undergoing a competency evaluation in another matter. The trial court ultimately granted the motion and appointed new counsel.

At a September 20, 2023 pretrial hearing, trial counsel advised that defendant was declared incompetent to stand trial in the other pending case and requested adjournment to determine competency in this matter. The trial court entered orders for defendant to undergo a forensic competency examination and an evaluation relating to his criminal responsibility. In February 2024, defendant was declared competent in his other case, and in March 2024, he stipulated to competency in this case. At defendant's June 2024 trial, a jury convicted him of both felon-in-possession and felony-firearm. The trial court sentenced him as a fourth-offense habitual offender, MCL 769.13, to 3 to 40 years' imprisonment for his felon-in-possession conviction, and 10 years' imprisonment for his felony-firearm conviction, to be served consecutively.

Defendant later moved for a judgment of acquittal or a new trial on multiple grounds. The trial court permitted one claim to proceed for additional factual development—that trial counsel performed ineffectively by failing to impeach Deputy Janczarek with his prior perjury in an unrelated case. See *People v Williamson*, unpublished per curiam opinion of the Court of Appeals, issued September 5, 2019 (Docket No. 331075) (documenting an instance in which Deputy Janczarek "knowingly and intentionally made a false statement in [a] search warrant"). At a subsequent hearing pursuant to *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973), the prosecution explained Deputy Janczarek was not accused of committing perjury against defendant; because of this Court's ruling in *Williamson*, however, it made a policy decision to dismiss pending cases that relied solely on his testimony (which included a separate case against defendant). Trial counsel testified he did not seek to impeach Deputy Janczarek because multiple officers were present when the handgun was located and because of the strength of the DNA evidence collected against defendant. Rather, trial counsel explained his trial strategy to highlight the other DNA evidence and individuals at the residence with access to John's bedroom. The trial court ultimately denied defendant's motion. This appeal by right followed.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues his trial counsel provided constitutionally ineffective performance by failing to (1) amend the motion to suppress filed by defendant's first attorney to correct a faulty legal argument; (2) introduce evidence of Deputy Janczarek's previously perjured testimony; (3)

prepare a complete defense; and (4) request an independent competency examination. We agree in part but ultimately decline to grant relief on all accounts.

## A. LEGAL OVERVIEW AND STANDARD OF REVIEW

The United States and Michigan Constitutions entitle a criminal defendant to assistance of counsel. US Const, AM VI; Const 1963, art 1, § 20. Counsel must be effective to satisfy the constitutional requirement. *Strickland v Washington*, 466 US 668, 686; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "Effective assistance of counsel is strongly presumed, and the defendant bears the heavy burden of proving otherwise." *People v Haynes*, 338 Mich App 392, 429; 980 NW2d 66 (2021) (quotation marks and citations omitted). "In order to obtain a new trial because of ineffective assistance of counsel, a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that [the] outcome would have been different." *People v Yeager*, 511 Mich 478, 488; 999 NW2d 490 (2023) (quotation marks and citation omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. (quotation marks and citations omitted).

"The defendant has the burden of establishing the factual predicate of his ineffective assistance claim." *People v Douglas*, 496 Mich 557, 592; 852 NW2d 587 (2014). To show trial counsel's performance failed to meet an objective standard of reasonableness, "a defendant must overcome the strong presumption that counsel's performance was born from a sound trial strategy." *Id*. at 585 (quotation marks and citation omitted).

"This Court reviews for an abuse of discretion a trial court's decision on a motion for a new trial." *People v Hughes*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 367172); slip op at 2. "A trial court abuses its discretion when its decision falls outside the range of principled outcomes." *Id*. A claim of ineffective assistance of counsel "presents a mixed question of fact and constitutional law." *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011). "The trial court must first find the facts and then decide whether those facts constitute a violation of the defendant's constitutional right to effective assistance of counsel." *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004). "A trial court's findings of fact, if any, are reviewed for clear error, and this Court reviews the ultimate constitutional issue arising from an ineffective assistance of counsel claim de novo." *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008). "Clear error exists if the reviewing court is left with a definite and firm conviction that the trial court made a mistake." *Armstrong*, 490 Mich at 289. While the trial court held a *Ginther* hearing, it was limited in scope to defendant's claim relating to cross-examining Deputy Janczarek. Because the evidentiary hearing did not address defendant's other ineffective-assistance claims, this Court's review of those claims is limited to mistakes apparent on the record. See *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020).

## B. AMENDMENT OF MOTION TO SUPPRESS

Defendant first argues trial counsel was ineffective for failing to amend the motion to suppress, filed by previous counsel, to present a different legal argument arising under the Fourth Amendment.

"The Fourth Amendment of the United States Constitution and its counterpart in the Michigan Constitution guarantee the right of persons to be secure against unreasonable searches and seizures." *People v Rodriguez*, 327 Mich App 573, 583; 935 NW2d 51 (2019) (quotation marks and citation omitted). See US Const, Am IV; Const 1963, art 1, § 11. "In general, searches conducted without both a warrant and probable cause to believe evidence of wrongdoing might be located at the place searched are unreasonable per se." *People v Mahdi*, 317 Mich App 446, 458; 894 NW2d 732 (2016) (quotation marks and citation omitted). "And, generally, when evidence has been seized in violation of the constitutional prohibition against unreasonable searches and seizures, it must be excluded from trial." *Id*. (quotation marks and citation omitted).

To demonstrate ineffective assistance concerning a Fourth Amendment violation, a "defendant must [] prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Hughes*, ___ Mich App at ___; slip op at 3 (citation omitted; alteration in original). We conclude defendant cannot demonstrate ineffective assistance because his Fourth Amendment claim as presented here is not meritorious.

The right to be free from unreasonable searches and seizures is personal and cannot be invoked by a third party. *People v Brown*, 279 Mich App 116, 130; 755 NW2d 664 (2008). "For an individual to assert standing to challenge a search, the individual must have had a legitimate expectation of privacy in the place or location searched, which expectation society recognizes as reasonable." *Id*. "A court determines the issue of standing by examining the totality of the circumstances, and a defendant bears the burden of establishing that he has standing." *Mahdi*, 317 Mich App at 459. In so doing, we look at multiple factors, like "ownership, possession and/or control of the area searched or item seized; historical use of the property or item; ability to regulate access; the totality of the circumstances surrounding the search; the existence or nonexistence of a subjective anticipation of privacy; and the objective reasonableness of the expectation of privacy considering the specific facts of the case." *Id*. (quotation marks and citation omitted).

Defendant cannot establish standing to challenge the search of the Pontiac residence because he was, at most, a guest at the residence where at least John, Lashunda, and Edwards resided. John identified the bedroom as his and explained he slept in the bed where the handgun was recovered. Nothing in the record demonstrates defendant exercised any control over the area or had the ability to regulate access to the bedroom. Detective Brian Wilson and Deputy Janczarek testified defendant did not make any movements when officers entered the bedroom, and no evidence shows defendant objected to the officers' actions or otherwise indicated he had a subjective expectation of privacy on which the officers were intruding. Moreover, defendant has not provided any evidence establishing how long he was at the residence before the search, or how long he intended to stay.

In resisting this conclusion, defendant notes the Fourth Amendment "protects people, not places." That much is true. See *Katz v United States*, 389 US 347, 351; 88 S Ct 507; 19 L Ed 2d 576 (1967). But that broad proposition does not demonstrate an entitlement to relief. "[A]n overnight guest in a home may claim the protection of the Fourth Amendment, but one who is merely present with the consent of the householder may not." *Minnesota v Carter*, 525 US 83, 90; 119 S Ct 469; 142 L Ed 2d 373 (1998). See *People v Parker*, 230 Mich App 337, 340-341; 584 NW2d 336 (1998) (holding that a temporary visitor to a home does not have a reasonable

-4-

expectation of privacy there). And as set forth, nothing in the record establishes that defendant was anything more than a mere visitor. Indeed, defendant's appellate brief concedes as much, stating that Fletcher and Edwards "could have verified that [defendant] did not sleep in the room where the firearm was found under the mattress; did not reside at the house; and was *merely visiting*."

At bottom, defendant does not present any evidence showing he was more than a visitor to the residence, or that he had a reasonable expectation of privacy in the bedroom. The trial court's determination that defendant lacked standing was not clearly erroneous from the record. Defendant, therefore, fails to establish his Fourth Amendment claim was meritorious, and trial counsel was not ineffective for failing to relitigate a meritless argument. See *Hughes*, ___ Mich App at ___; slip op at 3.

## C. DEPUTY JANCZAREK'S PERJURY

Defendant next contends that his trial counsel rendered constitutionally ineffective assistance by failing to introduce impeachment evidence against Deputy Janczarek. Prior to trial, the prosecution provided trial counsel with a copy of *People v Williamson*, unpublished per curiam opinion of the Court of Appeals, issued September 5, 2019 (Docket No. 331075). The trial court summarized *Williamson* as follows:

> In *Williamson*, Deputy Janczarek was found to have provided a false statement in an affidavit in support of a search warrant. . .the opinion. . .references another [] case, *People v Christoper Dukes*.

> In *Dukes*, Deputy Janczarek testified he placed a tracking device on the defendant's vehicle pursuant to a warrant, and the device provided inculpatory information. The Court of Appeals remanded the case back to the trial court which held an evidentiary hearing, ultimately finding that Janczarek's statement that he placed the GPS device pursuant to a warrant was inaccurate because no warrant had ever been issued.

Accordingly, trial counsel was aware of two separate incidents involving false statements, false testimony, or both from Deputy Janczarek. Trial counsel further knew that defendant himself had a separate case "dismissed due to Deputy Janczarek's untruthful statement."

Yet, trial counsel did not use any of this evidence to impeach Deputy Janczerak. At the *Ginther* hearing, trial counsel testified that, in light of the DNA evidence and Deputy Janczarek's role in recovering the firearm with other officers, he made a strategic choice not to introduce evidence of Janczarek's prior perjury, instead focusing on the theory that multiple individuals had access to the bedroom where the firearm was recovered. This rationale is wanting under the circumstances of this case.

Our Supreme Court has repeatedly held that defense counsel is not limited to advancing a single, exclusive theory of defense where multiple, non-mutually exclusive lines of attack are available. See, *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). Here, trial counsel could—and should—have pursued both the theory that others had access to the premises

-5-

and impeachment of Deputy Janczarek's credibility through evidence of his prior perjury. Presenting both theories would have furnished the jury with independent, mutually reinforcing grounds to question the prosecution's constructive possession theory and to entertain reasonable doubt as to defendant's guilt. In complex criminal proceedings, the effectiveness of the defense often depends on counsel's ability to marshal overlapping and alternative strategies, especially where the credibility of a central prosecution witness is at stake.

Furthermore, evidence of a witness's prior perjury is classic impeachment evidence, going directly to the heart of credibility. While case dependent, excluding such evidence may substantially impair the jury's capacity to accurately assess the witness's veracity. The United States Supreme Court has emphasized that the reliability of the factfinder's evaluation of evidence is fundamental to due process. See *Napue v Illinois*, 360 US 264, 269; 79 S Ct 1173; 3 L Ed2d 1217 (1959). This is perhaps particularly true with police officer testimony. As our Supreme Court has recognized, officers, while typically not qualified as experts, may be seen as such, especially where their "specialized training and experience" is presented the jury in advance of the problematic testimony. *People v Musser*, 494 Mich 337, 362-363; 835 NW2d 319 (2013).

Here, the jury learned that Janczarek had 25 years of experience on the police force and on the night in question was working collectively with other units, namely, the Michigan Department of Corrections, to locate defendant. This testimony served two purposes: first, it increased the credibility of Janczerak and second, it relayed to the jury that defendant did not abide by rules or restrictions of parole. And, after that initial testimony, Janczarek supplied that the gun was found beneath a mattress: "basically in the corner of the bed that [defendant] was standing in front of." Janczerak's testimony placed defendant in a location where he was capable of actual possession, and certainly constructive possession, of the handgun found beneath the mattress. Calling into question Janczerak's credibility was directly in keeping with trial counsel's purported strategy—to emphasize that someone *else*, one of the three unknown fingerprints found on the handgun, was the possessor of the gun, not defendant. Trial counsel repeatedly stated that his failure to impeach Janczerak was "strategy," but the strategy "in fact must be sound, and counsel's decisions as to it objectively reasonable; a court cannot insulate the review of counsel's performance by calling it trial strategy." *Douglas*, 496 Mich at 585 (quotation marks and citation omitted). The record reflects that in this case, failing to impeach one of two police officer witnesses cannot be considered sound or strategic.

And that brings us to prejudice. Because *two* officers testified, one without a documented history of perjury, it is not possible for us to find a reasonable likelihood of a different outcome on this record. Like Janczarek, Wilson testified as to defendant's close proximity to the location of the weapon. Wilson further testified as to his preservation of the evidence and safe placement of the gun in an evidence box. We agree with appellate counsel that learning of Janczerak's history with dishonesty "could have been used to question Deputy Wilson's, as the two were working together" but that alone does not create a reasonable probability of a different outcome, particularly given the DNA evidence.

## D. PRESENTATION OF A DEFENSE

Third, defendant argues trial counsel was ineffective for failing to develop a complete defense, like interviewing other witnesses or trying to determine to whom the other three DNA

profiles belonged. But he provides no explanation as to what evidence trial counsel would have obtained from these interviews and investigation, only speculating that these interviews *could have* shed light on who placed the handgun under the mattress. He also suggests that because Fletcher and Edwards both later died from gunshot wounds, this information should have been mentioned at trial to suggest the two men were involved in drug trafficking. Setting aside that Edwards died *after* defendant's trial, defendant makes no effort to establish that any of this information could have changed the outcome of his trial. Moreover, even if the jury believed the handgun belonged to another individual at the residence, this would not preclude the jury from finding defendant possessed the handgun. See *People v Johnson*, 293 Mich App 79, 83; 808 NW2d 815 (2011) (explaining possession can be joint or exclusive). Defendant, therefore, fails to establish this portion of his claim.

## E. COMPETENCY

To refresh, before trial, the trial court ordered that defendant be evaluated by the Forensic Center because of concerns regarding defendant's competency. He was eventually declared competent to stand trial, and defendant stipulated to his competency in this case. Defendant now argues trial counsel was ineffective for failing to request a competency examination independent of the one done in the other prosecution. This argument is without merit.

At the *Ginther* hearing, trial counsel denied having concerns regarding defendant's competency during trial, and agreed defendant was responsive and able to provide input regarding his defense. At no point did defendant have an outburst or engage in any other objectively concerning conduct during trial. While defendant claims he was suffering from a mental-health condition, he does not identify this condition or provide any substantiated argument reflecting competency concerns at trial. Defendant fails to rebut the presumption of his competence, and as such, fails to establish the factual predicate of this ineffective-assistance-of-counsel claim.

## III. SUFFICIENCY OF THE EVIDENCE

We next turn to defendant's challenge to the sufficiency of the evidence supporting his felon-in-possession and felony-firearm convictions.

"[A] conviction that is not supported by sufficient evidence to prove guilt beyond a reasonable doubt violates due process and cannot stand." *People v Prude*, 513 Mich 377, 384; 15 NW3d 249 (2024). "[D]ue process requires the prosecution to prove every element beyond a reasonable doubt." *People v Oros*, 502 Mich 229, 240 n 3; 917 NW2d 559 (2018). For evidence to be sufficient for a guilty verdict, a court must determine "whether a rational trier of fact could have found the essential elements of the crime to have been proved beyond a reasonable doubt." *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011).

"This Court reviews de novo defendant's challenge to the sufficiency of the evidence." *Id*. We review "the evidence in the light most favorable to the prosecution to determine whether a rational trier of fact could have found the essential elements of the crime to have been proved beyond a reasonable doubt." *Id*. "The standard of review is deferential; a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury

verdict." *People v Bailey*, 310 Mich App 703, 713; 873 NW2d 855 (2015) (quotation marks and citation omitted).

To prove felon-in-possession, the prosecution must establish (1) defendant possessed a firearm, (2) when he was ineligible to do so under MCL 750.224f, as a result of a prior felony conviction. See *People v Bass*, 317 Mich App 241, 267-268; 893 NW2d 140 (2016). Felony-firearm requires that a defendant possess a firearm during the commission of, or the attempt to commit, a felony. *Id*. at 268-269. Defendant stipulated he was ineligible to possess a firearm because of a prior felony conviction, and on appeal, challenges only whether the prosecution presented sufficient evidence to show he constructively possessed a firearm.

Possession "can be actual or constructive, joint or exclusive," and a defendant "has constructive possession if there is proximity to the article together with indicia of control." *Johnson*, 293 Mich App at 83 (quotation marks and citation omitted). "Put another way, a defendant has constructive possession of a firearm if the location of the weapon is known and it is reasonably accessible to the defendant." *Id*. (quotation marks and citation omitted). Possession is a question of fact for the jury, and "can be proved by circumstantial evidence and reasonable inferences arising from the evidence." *People v Strickland*, 293 Mich App 393, 400; 810 NW2d 660 (2011). However, "the circumstantial proof must facilitate reasonable inferences of causation, not mere speculation." *People v Xun Wang*, 505 Mich 239, 251; 952 NW2d 334 (2020) (quotation marks and citation omitted).

Through the lens of these standards, we conclude a rational juror could find defendant possessed the handgun found under the mattress in John's bedroom. It is true that proximity alone is not enough to establish possession. *People v Bylsma*, 493 Mich 17, 31-32; 825 NW2d 543 (2012). But the prosecution here offered powerful evidence linking defendant to the handgun—DNA. Not only did that scientific evidence establish he was approximately 6.27 sextillion times more likely to have possessed the firearm, it also excluded John—the individual who exercised control over the bedroom—as a contributor. These facts distinguish the main (and non-binding federal) case upon which defendant relies: *United States v Beverly*, 750 F2d 34 (CA 6, 1984), which just involved a handgun found in a wastebasket near the defendant.

Accordingly, a jury could have reasonably believed the prosecution's theory that defendant knew the handgun was under the mattress because he placed it there when he realized law enforcement officers were present. And to be sure, the presence of DNA could only prove that defendant *may* have touched the handgun at some point. But "[a] jury is free to believe, or disbelieve, in whole or in part, any of the evidence presented." *People v Perry*, 460 Mich 55, 63; 594 NW2d 477 (1999). It is for "the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence[.]" *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002).

For these reasons, there was sufficient evidence demonstrating firearm possession supporting defendant's felon-in-possession and felony-firearm convictions.

## IV. SPEEDY TRIAL

We next consider defendant's speedy trial claim. "Whether a defendant was denied his constitutional right to a speedy trial is a mixed question of fact and constitutional law." *People v Smith*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 362114); slip op at 2. That is, we review the trial court's factual findings for clear error and questions of law de novo. *Id*. at ___; slip op at 3.

The United States and Michigan Constitutions guarantee criminal defendants the right to a speedy trial. See US Const, Am VI; Const 1963, art 1, § 20. "The time for judging whether the right to a speedy trial has been violated runs from the date of the defendant's arrest." *People v Williams*, 475 Mich 245, 261; 716 NW2d 208 (2006). Unlike the similar 180-day rule set forth in MCL 780.131,[1] we measure constitutional claims not based on "a fixed number of days," *id*., but rather by balancing the factors set forth in *Barker v Wingo*, 407 US 514, 530; 92 S Ct 2182; 33 L Ed 2d 101 (1972), *Williams*, 475 Mich at 261-262. Those are: (1) length of delay, (2) reason for delay, (3) defendant's assertion of his right, and (4) prejudice to defendant. We address each in turn.

*Length of Delay*. The period from arrest to trial is "to some extent a triggering mechanism." *Barker*, 407 US at 530. Courts presume prejudice after a delay of 18 months or more, and the burden shifts to the prosecution to establish that the delay did not prejudice defendant. *Williams*, 475 Mich at 262. That is the case here. Defendant was charged on May 19, 2022, and trial began 25 months later on June 17, 2024.

*Reason for Delay*. This factor weighs strongly against defendant because as explained, most of the delay arose from his counsel's request to withdraw and adjudicating defendant's competency to stand trial.

Shortly more than two months following defendant's arraignment, on July 27, 2022 (which was delayed two weeks at the prosecution's request to obtain a certified copy of defendant's felony convictions), defendant's counsel requested a pretrial hearing in four to six weeks to obtain the preliminary examination transcript. His counsel, however, subsequently requested to adjourn the scheduled pretrial hearing to September 21, 2022, to conduct investigation and discovery. At that hearing, counsel argued the motion to suppress and motion to quash.

Additional delay occurred after the trial court then adjourned the next pretrial hearing three times at defense counsel's request. And at the scheduled hearing time, the trial court was forced to adjourn it again when defendant's counsel called to inform the trial court that he was in another, unrelated proceeding.

---

[1] Defendant's appellate brief also discusses a 180-day rule violation, which "is distinct from a criminal defendant's constitutional right to a speedy trial under our federal and state Constitutions[.]" *People v Witkoski*, 341 Mich App 54, 60; 988 NW2d 790 (2022). But his statement of questions presented did not raise a 180-day rule claim, rendering this issue unreviewable. See *People v Fonville*, 291 Mich App 363, 383; 804 NW2d 878 (2011).

A pretrial hearing occurred on January 11, 2023, and his counsel agreed to a trial date in June. However, on April 18, 2023, defendant's counsel moved to withdraw, and the previously scheduled pretrial hearing the next day was adjourned to April 26, 2023, at his request. Adding to the delay arising from the need to appoint new counsel for defendant, competency concerns also arose and the next pretrial was scheduled for September 6, 2023. This date was then adjourned to September 20, 2023, because the trial court was unavailable. Ultimately, the trial court was informed of defendant's incompetency declaration in his other case and adjourned the hearing to allow the parties to file pleadings regarding defendant's competency.

At the October 4, 2023 pretrial hearing, defendant was referred for a competency evaluation, and a hearing was set for January 10, 2024. That scheduled hearing was adjourned to February 7, 2024 (due to continued competency issues), then further adjourned to February 21, 2024 (at trial counsel's request). Because of conflicting competency reports in defendant's cases, the hearing was continued to March 27, 2024, when the parties stipulated to defendant's competency.

Though defendant concedes his competency issues delayed the possibility of trial from April 2023 to March 2024, he asserts any other delay should not be held against him. But he fails to explain why these delays would not be attributable to him, where every adjournment from his arraignment to January 2023 was requested by his original counsel. See *People v Cain*, 238 Mich App 95, 113; 605 NW2d 28 (1999). After defendant's trial was scheduled for June 2023, counsel requested to withdraw in April 2023, and at the subsequent hearing is when the first concerns regarding defendant's competency were raised. The next hearing did not occur until September 2023, and even if this delay is credited to counsel's withdrawal (as opposed to defendant's competency), any delay caused by the withdrawal of defense counsel cannot be attributed to the prosecution. See *Williams*, 475 Mich at 262-263. Accordingly, the reasons for the delays are not helpful to defendant.

*Assertion of His Right*. This factor weighs in defendant's favor. He raised speedy trial concerns at the April 2023 hearing to address counsel's withdrawal, at the next hearing in September 2023, and again at an October 2023 hearing. Having asserted this right three times in the trial court, this factor weighs in defendant's favor.

*Prejudice*. "[A] deprivation of the right to a speedy trial does not per se prejudice the accused's ability to defend himself." *Barker*, 407 US at 521. Rather, "[t]here are two types of prejudice which a defendant may experience, that is, prejudice to his person and prejudice to the defense." *Williams*, 475 Mich at 264 (quotation marks and citation omitted). The prosecutor has disproved defendant suffered from either prejudice.

Concerning incarceration, a defendant who is "incarcerated on an unrelated offense" during the delay suffers from no trial-delay prejudice. *People v Holtzer*, 255 Mich App 478, 493; 660 NW2d 405 (2003). Here, defendant was incarcerated without bond on an unrelated case during the entire delay. Consistent with *Holtzer*, the trial delay did not prejudice defendant as a result of his custody because he was already incarcerated and would have been independent of the delay.

The only prejudice to defense raised is that two individuals connected to the residence—Edwards (who resided there) and Fletcher (who was in the bedroom with defendant)—both

subsequently died. "If witnesses die or disappear during a delay, the prejudice is obvious." *Smith*, ___ Mich App at ___; slip op at 6 (quotation marks and citation omitted). But Edwards died in October 2024, three months *after* defendant's trial. And as for Fletcher, we see nothing in the record concerning how his testimony would have aided the defense given defendant's proximity to the gun; his DNA evidence being on the gun; and the trial testimony establishing the bed belonged not to Fletcher, but to John. For this reason, defendant's argument that Fletcher "could have verified that [defendant] did not sleep in the room where the firearm was found under the mattress; did not reside at the house; and was merely visiting" does not persuasively establish prejudice.

*Conclusion*. Balancing all relevant factors, defendant fails to establish his right to a speedy trial was violated.

## V. PROSECUTORIAL ERROR

Defendant next contends the prosecutor engaged in misconduct by arguing facts not in evidence in closing. Specifically, that defendant held the gun found underneath the mattress and hid it there once law enforcement officers showed up at the residence to arrest him. We do not agree.

This Court reviews claims of prosecutorial error on a case-by-case basis, and "must examine the entire record and evaluate a prosecutor's remarks in context." *People v Dobek*, 274 Mich App 58, 64; 732 NW2d 546 (2007). "A prosecutor may not make a factual statement to the jury that is not supported by the evidence, but he or she is free to argue the evidence and all reasonable inferences arising from it as they relate to his or her theory of the case." *Id*. at 66 (citations omitted). Because defendant failed to "timely and specifically challenge the prosecutor's statements or conduct," we review this unpreserved claim of prosecutorial error for plain error affecting his substantial rights. *People v Thurmond*, 348 Mich App 715, 735-736; 20 NW3d 311 (2023).

No error, plain or otherwise, occurred. As discussed, considering defendant's proximity to the handgun's location and that his DNA was found on the handgun, one could reasonably infer defendant placed the handgun underneath the mattress, and as such, would know its location. And even if the prosecutor's statements were improper, the trial court instructed the jury that the prosecutor's arguments were not evidence. "Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors." *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003). To warrant reversal in the context of prosecutorial error, a defendant must show the curative instruction was inadequate to cure any defect and that harm occurred. See *People v Ackerman*, 257 Mich App 434, 449-450; 669 NW2d 818 (2003). Defendant offers no argument as to how the jury failed to follow the trial court's instructions, why the instructions did not cure any potential error, or how any of these statements prejudiced him or denied him a fair trial. Accordingly, he is not entitled to reversal.

## VI. CONSTITUTIONALITY OF MCL 750.224f

Defendant's last claim of appeal merits little analysis. He contends that Michigan's felon-in-possession statute, MCL 750.224f, is facially unconstitutional following *New York State Rifle*

*& Pistol Ass'n v Bruen*, 597 US 1, 17; 142 S Ct 2111; 213 L Ed 2d 387 (2022).[2]  But this Court has already upheld the constitutionality of MCL 750.224f post-*Bruen*.  In *Hughes*, this Court rejected the exact argument defendant advances here, holding that the restrictions of MCL 750.224f "are consistent with the Nation's historical precedent of regulating firearm possession by persons convicted of felonies" and thus are constitutional.  ___ Mich App at ___; slip op at 12-14.  And we did so in August 2025, three months before defendant filed his appellate brief and five months before the prosecutor filed its appellee brief.  Because *Hughes* is binding precedent, defendant's constitutional challenge fails.  See *People v Bennett*, 344 Mich App 12, 21; 999 NW2d 827 (2022).

## VII.  CONCLUSION

For these reasons, we affirm the trial court's judgment.

/s/ Adrienne N. Young
/s/ Stephen L. Borrello
/s/ Christopher M. Trebilcock

---

[2] Defendant's appellate brief appears to additionally claim that the felony-firearm statute, MCL 750.227b, is also unconstitutional.  Like his 180-day rule claim, we cannot review it because he did not list this in his statement of questions presented.  See *Fonville*, 291 Mich App at 383.